## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HARRY L. BECKETT,** | : | **CIVIL NO. 1:CV-10-00050** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEPARTMENT OF CORRECTIONS,** | : | |
| *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Harry L. Beckett ("Beckett"), an inmate currently incarcerated at the

State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon"),

commenced this action on January 11, 2010, with the filing of a complaint pursuant to

the provisions of 42 U.S.C. § 1983, as amended on December 8, 2010.  (Doc. 70.)

Beckett alleges that the Defendants, including Prison Health Services, Inc. ("PHS")

and a number of its medical staff, (collectively, "Medical Defendants"),[1] as well as a

number of Department of Corrections ("DOC") employees,[2] violated his constitutional

---

[1]  The Medical Defendants are as follows: PHS; Angela Auman, Physician Assistant
("PA"); Dawn Mills, PA; and, Olga Beresgouskava, M.D.

[2]  The DOC Defendants are as follows: DOC; Mary L. Showalter, SCI-Huntingdon
Health Care Administrator; Lynn Albright, Nurse; and William Randolph, Nurse.  It is noted that
Beckett also names "John/Jane Doe, Unknown Employees of Pennsylvania Department of
Corrections" as Defendants.  As Plaintiff in this action, Beckett is responsible for identifying the
parties named as defendants in order to effectuate service.  *See* FED. R. CIV. P. 4(c); *Fulton v. United
States*, 198 F. App'x 210, 214 (3d Cir. 2006).  To date, Beckett has not notified the court of any

rights, conspired against him in order to deny him his constitutional rights, treated him differently from similarly-situated persons, committed discrimination in violation of 42 U.S.C. §§ 12131-12134, and committed a number of pendant state law violations when they failed to properly treat his medical condition.

Presently before the court are two separate motions to dismiss the complaint, filed by Medical Defendants and DOC Defendants, respectively.  (Docs. 71 & 81.) For the reasons that follow, the motions to dismiss will be granted in part and denied in part.

## I.    **Background**

### A.    **Facts**

In the amended complaint, Beckett provides the following factual background with respect to his claims.  The court notes that for purposes of disposition of the instant motions to dismiss, the factual allegations asserted in the amended complaint will be accepted as true and viewed in a light most favorable to Beckett.[3]

---

success on his part in identifying these unnamed defendants.  As such, the failure to identify and serve these defendants will result in the matter being dismissed as to "John/Jane Doe, Unknown Employees of Pennsylvania Department of Corrections."  *Fulton*, 198 F. App'x at 214.

[3]  In Beckett's motion for leave to amend his complaint, Beckett attached the proposed amended complaint.  (*See* Doc. 39.)  In addition, Beckett filed a brief in support of the motion for leave to file an amended complaint.  (Doc. 40.)  Attached to that brief are several exhibits that

Prior to his incarceration, Beckett was injured during his service in the United States Army from 1989 through 1991.  (Doc. 70 ¶ 13.)  On or about June 28, 1991, Beckett was honorably discharged from the Army due his physical injuries.  (*Id.*)  Sometime thereafter, Beckett's condition developed into reflex sympathetic dystrophy ("RSD") and complex regional pain syndrome ("CRPS").  (*Id.* ¶ 14.)

On or about November 15, 1992, Beckett was convicted and sentenced to life imprisonment by the Court of Common Pleas for Dauphin County, Pennsylvania.  (*Id.* ¶ 15.)  In the fall of 1993, he was transferred to SCI-Huntingdon.  (*Id.*)

On or about July 3, 1996, Dr. Mangino, SCI-Huntingdon's medical director, prescribed Beckett with "medical showers" in the infirmary after the 4:00 p.m. count.  (*Id.* ¶ 16.)  Further, on July 10, 1996, P. Yarger submitted a medical memorandum which stated, "Dr. Mangino has ordered Beckett to have a hot 15 minute shower in the infirmary. . . .   This is due to RSD to the left upper extremity."  (*Id.*)  As a result of this treatment plan, Beckett's condition improved.  (*Id.* ¶ 22.)  However, this order for hot showers expired sometime in August 1996.  (*Id.* ¶ 18.)

---

Beckett characterizes as "Exhibits in Support of Amended Complaint," and to which he relies in his amended complaint.  (*See* Doc. 40-2.)  Because under the standard to review a motion to dismiss, a court may consider exhibits attached to the complaint, *see Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), the court will consider Beckett's exhibits in support of the amended complaint.

On or about August 1996, during sick call, Defendant PA Mills refused to reorder Beckett's prescribed treatment of 15-minute hot showers or schedule him for an examination with the doctor.[4]  (*Id.* ¶ 18.)  During this time, Defendant PA Aultman also refused to reorder the hot showers or schedule an examination with a doctor.  (*Id.* ¶ 19.)  Beckett avers that the repeated refusal or delay in the prescribed treatment since that time has led him to experience "excruciating pain and suffering and a deterioration of his health and future health."  (*Id.* ¶¶ 21, 22.)

On November 4, 2006, Beckett passed out as a result of his chronic RSD/CRPS and fractured his hip.  (*Id.* ¶ 23.)  Defendants Albright and Randolph responded to this emergency, but failed to provide reasonable or adequate medical care.  (*Id.* ¶¶ 24, 25.)  Beckett acknowledges, however, that he was subsequently prescribed a "cane as needed."  (*Id.* ¶ 23.)  Following the incident, Defendants Albright and Randolph issued a misconduct to Beckett as a result of the November 4, 2006 incident.  (*Id.* ¶ 26.)  Beckett asserts that Albright and Randolph knowingly issued this false misconduct with the intention to discriminate against him because of his "serious

---

[4]  In his amended complaint, Beckett asserts that SCI-Huntingdon maintains two PAs who interview and examine inmates at sick call.  (Doc. 70 ¶ 17.)  The PAs can reorder prescribed treatment for serious and chronic medical conditions or schedule inmates for an examination with a doctor when a prescribed medication or treatment expires.  (*Id.*)

medical disability" and to treat him differently from similarly situated inmates.  (*Id.* ¶¶ 26, 27.)

From 1995 through 2008, Defendant Showalter was aware of Beckett's RSD/CRPS and the pain associated with his condition as a result of the denial of hot showers.  (*Id.* ¶ 28.)  In addition, from 1995 through 2009, Beckett submitted numerous inmate requests and grievances to Defendant Showalter to have his hot shower treatment reinstated.  (*Id.* ¶ 30.)  Beckett further avers that Defendant Showalter and Defendant Beresgouskava "condoned and acquiesced" in an "unwritten 'practice, procedure or custom' of arbitrarily and unreasonably discontinuing the prescribed '15 minute medical showers' without a[n] informed medical determination . . . ."  (*Id.* ¶ 29.)

In addition to these allegations, Beckett asserts in his amended complaint that all Defendants conspired to "deny, deprive, impair or impede" his rights under federal and state law, as well as under the "American Disability Act" when they repeatedly refused to deny him the prescribed treatment of hot showers.  (*Id.* ¶ 35.)  He also claims that at some point in time while he was in the Restricted Housing Unit ("RHU"), he was limited to a five-minute shower three times a week; his prescribed back brace and neck collar were confiscated; he was denied two blankets and a pillow;

5

and was confined within a "cold punishment cell." (*Id*. ¶ 35(f).)  He also claims that he was discriminated against when prison officials required him to pay a $16.00 co-pay for a doctor visit for his RSD/CRPS.  (*Id*. ¶ 36.)

### B.    Relevant Procedural History

Beckett filed his motion for leave to file an amended complaint on June 10, 2010.  (Doc. 39.)  After responsive and reply briefing was submitted (*see* Docs. 47, 50), by order dated December 10, 2010, the court granted Beckett's motion for leave to amend his complaint, and accepted the proposed amended complaint for filing. (Doc. 69.)  Medical Defendants filed a motion to dismiss on December 17, 2010. (Doc. 71.)  DOC Defendants filed a motion to dismiss on February 4, 2011.  (Doc. 81.)  Responsive and reply briefing has been filed, and thus the motions to dismiss are ripe for consideration.

### II.    Standard of Review - Motion to Dismiss

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Fair notice" in Rule

8(a)(2) "depends on the type of case – some complaints will require at least some

factual allegations to make out a showing that the pleader is entitled to relief."

*Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted).

"[A] situation may arise where, at some point, the factual detail in a complaint is so

undeveloped that it does not provide a defendant the type of notice of claim which is

contemplated by Rule 8."  *Id.*  A plaintiff must provide "more than labels and

conclusions" or "a formulaic recitation of the elements of a cause of action" to show

entitlement to relief.  *Twombly*, 550 U.S. at 555; *accord*, *e.g.*, *Phillips*, 515 F.3d at

231-32; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the court is not

"compelled to accept unsupported conclusions and unwarranted inferences or a legal

conclusion couched as a factual allegation.") (quotations and citations omitted));

*Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, –

U.S. –, 129 S. Ct. 1937, 1949 (2009) (recognizing that Rule 8 pleading standard "does

not require 'detailed factual allegations,' but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation") (quoting *Twombly*, 550 U.S. at 555).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure

to state a claim upon which relief can be granted.  In deciding a motion to dismiss

under Rule 12(b)(6), the court is required to accept as true all of the factual allegations

in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), and

all reasonable inferences permitted by the factual allegations, *Watson v. Abington

Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to

the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*,

515 F.3d at 233. If the facts alleged are sufficient to "raise a right to relief above the

speculative level" such that the plaintiff's claim is "plausible on its face," a complaint

will survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at

234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*,

495 F.3d 62, 66 (3d Cir. 2007). *See Iqbal*, 129 S. Ct. at 1949 (explaining a claim has

"facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged").

Further, when a complaint contains well-pleaded factual allegations, "a court should

assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *Id*. at 1950. However, a court is "not bound to accept as true a

legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at

555). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

8

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

9

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.   **Discussion**

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability under § 1983 is personal in nature and a defendant is liable only if he was personally, affirmatively involved in the alleged wrongdoing. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997), *abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). A defendant who supervised the wrongdoer but did not personally participate in the wrongful act is not liable under § 1983 on a theory of *respondeat superior* unless he personally directed or had actual knowledge of, and acquiesced in, the deprivation. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Robinson*, 120 F.3d at 1294. A defendant who lacked any supervisory power over the wrongdoer and who was not personally, affirmatively involved in the alleged wrongful conduct is not liable under § 1983. *Id.*

As stated above, there are two motions to dismiss pending in the instant case. In their motion to dismiss, DOC Defendants argue that the amended complaint should be dismissed on the following grounds: (1) Beckett's claims against DOC Defendants in their official capacities are barred by the Eleventh Amendment; (2) Beckett's state tort claims against the DOC are barred by sovereign immunity where the Commonwealth has not waived immunity for the claims asserted; and (3) Beckett has failed to state a conspiracy claim.  (Doc. 93.)  In their motion to dismiss, Medical Defendants argue that the amended complaint should be dismissed on the following grounds: (1) Beckett has failed to allege personal involvement of certain Medical Defendants; (2) Beckett's claims accruing prior to January 2008 are barred by the applicable statute of limitations; (3) Beckett has failed to exhaust his administrative remedies with respect to his claims in the amended complaint; (4) Beckett has failed to state a claim of deliberate indifference towards his medical needs; (5) Beckett has failed to state a claim under the Americans with Disabilities Act ("ADA"); (6) Beckett has failed to state a conspiracy claim; (7) Beckett has failed to state a claim under the Fourteenth Amendment; and (8) Beckett's claim for punitive damages should be dismissed.  (Doc. 72.)  The court will address the arguments set forth in both motions to dismiss in turn.

**A.   DOC Defendants' Motion to Dismiss**

    **1.   Official Capacity**

DOC Defendants contend that the Eleventh Amendment bars Beckett's claims for money damages against them in their official capacities.  The Eleventh Amendment precludes federal court jurisdiction over suits by private parties against states or their agencies unless sovereign immunity has expressly been waived.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).  By statute, the Commonwealth of Pennsylvania has specifically withheld its consent to be sued.  *See* 42 PA. CONS. STAT. ANN. § 8521(b); *see also Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981).  The doctrine of sovereign immunity also extends to a state official in his or her official capacity because "it is not a suit against the official but rather is a suit against the official's office.  As such it is no different from a suit against the State itself."  *Garden State Elec. Inspection Servs. v. Levin*, 144 F. App'x 247, 151 (3d Cir. 2005) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  In *Will*, the Supreme Court held that a state and state officers acting in their official capacities are not "persons" against whom a claim for money damages under § 1983 can be asserted.  *Will*, 491 U.S. at 64.  However, the Eleventh Amendment does not preclude a suit against a state official acting in his or her individual, or personal capacity.  *Hafer v.*

*Melo*, 502 U.S. 21, 31 (1991); *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002).  Based on this well-settled law, Beckett's claims for money damages against the all of the DOC Defendants in their official capacities will be dismissed.  To the extent that Beckett has brought § 1983 claims against Defendants Showalter, Albright, and Randolph in their individual capacities, however, those claims remain viable.  *See Hafer*, 502 U.S. at 31 ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.").

Turning to Beckett's claims for injunctive relief, the court concludes the following.  In *Will*, the Supreme Court noted that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) and citing *Ex Parte Young*, 209 U.S. at 159-60)).  However, this language in *Will* only applies to "a *state official* in his or her official capacity." *Will*, 491 U.S. at 71 n.10 (emphasis added).  As a result, Beckett's § 1983 claims for injunctive relief against the DOC, a state department, are barred under the holding of *Will*.  Such claims will proceed against the remaining DOC Defendants.

14

In sum, Beckett's § 1983 claims against the DOC will be dismissed in their

entirety.  To the extent that Beckett intends to seek money damages from the

remaining DOC Defendants in their official capacities under § 1983, those claims will

be dismissed as well.  However, Beckett's § 1983 claims for money damages against

the remaining DOC Defendants in their individual capacities remain viable in all

respects.  Finally, Beckett's § 1983 claims for injunctive relief against the remaining

DOC Defendants will survive the instant motion to dismiss.

### 2.   <u>Sovereign Immunity</u>

DOC Defendants argue that the DOC is statutorily immune from suit with

regard to Beckett's pendant state law claims.  The court agrees.

Under Pennsylvania's sovereign immunity statute, "the Commonwealth, and its

officials and employees acting within the scope of their duties, shall continue to enjoy

sovereign and official immunity and remain immune from suit except as the General

Assembly shall specifically waive the immunity."  1 PA. CONS. STAT. ANN. § 2310.

The General Assembly specifically waived sovereign immunity in nine areas,

including cases involving medical professional liability.  42 PA. CONS. STAT. ANN. §

8522.[5]  However, it is well-settled that immunity is waived only for claims asserted

---

[5]  The nine exceptions to sovereign immunity pursuant to 42 Pa. Cons. Stat. Ann. §
8522(b) are:

against health care employees, and not to individuals who are not medical professionals. *McCool v. Dep't of Corr.*, 984 A.2d 565, 570 (Pa. Cmwlth. 2009) (interpreting 42 PA. CONS. STAT. ANN. § 8522(b)(2)).

Here, Beckett's state law claims against the DOC are barred by Pennsylvania's sovereign immunity statute. While the claims do fall within the category of waiver for acts of health care employees of Commonwealth agency medical facilities or institutions, including the Department of Corrections, *see* 42 PA. CONS. STAT. ANN. § 8522(b)(2), clearly the Department of Corrections itself is not a health care employee. Thus, the state law claims set forth against the DOC will be dismissed. The state law claims against the remaining DOC Defendants remain viable.

---

(1) operation of any motor vehicle in the possession or control of a Commonwealth party; (2) acts of health care employees of Commonwealth agency medical facilities or institutions; (3) care, custody, or control of personal property in the possession or control of Commonwealth parties; (4) dangerous condition of Commonwealth agency real estate and sidewalks; (5) dangerous condition of highways under the jurisdiction of Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements; (6) care, custody, or control of animals in the possession or control of a Commonwealth party; (7) sale of liquor at Pennsylvania liquor stores; (8) acts of a member of the Pennsylvania military forces; and (9) administration, manufacture and use of toxoid or vaccine.

### 3.     Conspiracy Claim

DOC Defendants argue that Beckett's conspiracy claim should be dismissed because his allegations of conspiracy are insufficient to establish a claim.  The court does not agree.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations.  *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992); *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989); *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989).  The Third Circuit has noted that a civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3) the identity of the officials responsible for the conduct.  *Oatess v. Sobolevitch*, 914 F.2d 428, 432 n.8 (3d Cir. 1990); *see also Colburn v. Upper Darby Twp.*, 838 F.2d 663 (3d Cir. 1988).

The essence of a conspiracy claim is an agreement or concerted action between individuals.  *See D.R. by L.R.*, 972 F.2d at 1377; *Durre*, 869 F.2d at 545.  A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive the plaintiff of a protected federal right.  *See D.R. by*

17

*L.R.*, 972 F.2d at 1377; *Rose*, 871 F.2d at 366.  Where a civil rights conspiracy is

alleged, there must be specific facts in the complaint that tend to show a meeting of

the minds and some type of concerted activity.  *Deck v. Leftridge*, 771 F.2d 1168,

1170 (8th Cir. 1985).  A plaintiff cannot rely on subjective suspicions and

unsupported speculation.  *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

 Viewing the amended complaint in a light most favorable to Beckett, the court

finds that he has stated a conspiracy claim against all Defendants.  In the amended

complaint, Beckett points to the conduct allegedly committed by all Defendants,

namely failing to treat or acknowledge his serious medical need and/or discriminating

against him based on his medical disability.  He sets forth these incidents with some

specificity, referring to sick calls and filed grievances.  In addition, he names the

individuals involved in such conduct.  In their motion to dismiss, DOC Defendants

simply state that he "alleges merely that the Defendants conspired in a concerted effort

to deny him his constitutional rights." (Doc. 93.)  Notably, the ultimate success or

failure of this claim is not before the court on a 12(b)(6) motion, only whether Beckett

has properly alleged a cause of action, which he has.  Therefore, DOC Defendants'

motion to dismiss as to this claim will be denied.  Moreover, as Medical Defendants

have set forth a similar argument in their motion to dismiss, the court need not address

that argument again herein.  (*See* Doc. 72 at 11.)  Medical Defendants' motion to

dismiss relating to a claim of conspiracy will also be denied.

### B.   Medical Defendants' Motion to Dismiss

#### 1.   Personal Involvement of PHS

Medical Defendants argue that PHS should be dismissed as a party in this

action because Beckett has failed to show personal involvement of that defendant with

respect to his present claims.  The court agrees.

It is well-established that personal liability under § 1983 cannot be imposed

upon a state official based on a theory of respondeat superior.  *See, e.g.*, *Rizzo v.

Goode*, 423 U.S. 362, 368 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d

1077, 1082 (3d Cir. 1976).  It is also well-settled in the Third Circuit that the

defendant's personal involvement in alleged constitutional deprivations is a

requirement in a § 1983 case and that a complaint must allege such personal

involvement.  *Hampton*, 546 F.2d at 1082.  Each named defendant must be shown,

through the complaint's allegations, to have been personally involved in the events or

occurrences upon which a plaintiff's claims are based.  *Id*.  As the court stated in *Rode

v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in
> the alleged wrongs . . . .   Personal involvement can be shown through

19

> allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge and
> acquiescence, however, must be made with appropriate particularity.

*Rode*, 845 F.2d at 1207 (citations omitted).  Courts have also held that an allegation

seeking to impose liability on a defendant based on supervisory status, without more,

will not be subject the official to section 1983 liability.  *Id*. at 1208.

In the instant case, Beckett does not allege any personal involvement of PHS

with respect to his claims.  As a result, and based on the well-settled law set forth

above, PHS is dismissed from this action.

### 2.   Statute of Limitations

Medical Defendants argue that Beckett's claims accruing prior to January 2008

are barred by the applicable statute of limitations.  Included in this argument is

Medical Defendants' contention that the continuing violations doctrine is not

applicable to Beckett's claims.[6]  The court does not agree.

For claims brought pursuant to § 1983, federal courts must apply the statute of

limitations for analogous state actions.  *Urrutia v. Harrisburg Cnty. Police Dep't*, 91

F.3d 451, 457 n.9 (3d Cir. 1996).  Section 1983 claims are analogous to personal

---

[6]  Medical Defendants also argue that Beckett has failed to allege sufficient facts to
establish the doctrine of fraudulent concealment.  As it does not appear that Beckett is alleging
active concealment of fraudulent conduct in his amended complaint, the court need not address this
argument.

20

injury tort actions and are subject to the state statute of limitations governing such claims.  *287 Corporate Ctr. Assocs. v. Twp. of Bridgewater*, 101 F.3d 320, 323 (3d Cir. 1996).  The governing law here is Pennsylvania's two-year statute of limitations. 42 PA. CONS. STAT. ANN. § 5524.  The statute begins to run when a plaintiff knew or should have known of the violation of his rights.  *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989).  A statute of limitations defense may be raised through a 12(b)(6) motion only if it is clear from the face of the complaint that the action would be time barred.  *Benak v. Alliance Capital Mgmt.*, L.P., 435 F.3d 396, 400 n.14 (3d Cir. 2006).

The continuing violations doctrine is an equitable exception to the running of the statute of limitations.  It applies "when a defendant's conduct is part of a continuing practice," *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *Brenner v. Local 514, United Bd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991)), and the conduct is "more than the occurrence of isolated or sporadic acts," *Cowell*, 263 F.3d at 292 (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)).  Under the doctrine, a plaintiff may bring suit for otherwise time-barred acts "so long as the last act evidencing the continuing practice falls within the limitations period."  *Cowell*, 263 F.3d at 292 (quoting *Brenner*, 927

21

F.2d at 1295).  A court should consider three factors in determining the applicability

of the continuing violations doctrine: (1) subject matter - similar conduct; (2)

frequency - recurring or isolated conduct; and (3) degree of permanence - conduct of

an unchanging nature as to trigger an awareness of and duty to assert rights.  *Cowell*,

263 F.2d at 292 (quoting *West*, 45 F.3d at 755 n.9).  The third factor carries the most

weight in the analysis.  *Cowell*, 263 F.2d at 292.  Courts are mindful, however, that

"[e]quitable tolling is a rare remedy to be applied in unusual circumstances." *Wallace*

*v. Kato*, 549 U.S. 384, 396 (2007).

In this case, Beckett alleges that all Defendants began to violate his rights in

August 1996, when they denied him the medical treatment of hot showers and that this

violation continued through the years up to the filing of his complaint.  In their motion

to dismiss, Medical Defendants argue that the violation at issue, the lack of requested

treatment, had a degree of permanence such that Beckett was put on notice of his duty

to assert his rights each time he was denied the medical treatment. Viewing the facts in

a light most favorable to Beckett, Defendants may have first denied Beckett the hot

showers in 1996, but they continued to deny him the showers repeatedly, yet

sporadically, up until at least 2009.  Because the last act evidencing the continuing

22

practice does indeed fall within the limitations period, the court will deny Medical

Defendants' motion to dismiss as to this claim.

### 3. Exhaustion of Administrative Remedies

Medical Defendants argue that Beckett's claims in his amended complaint

should be dismissed based on Beckett's failure to exhaust his administrative remedies,

as required by the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996). The court disagrees.

The PLRA requires a prisoner to present his claims through an administrative

grievance process before seeking redress in federal court. The act specifically

provides as follows:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any
> jail, prison, or other correctional facility until such administrative
> remedies as are available are exhausted.

42 U.S.C. § 1997e(a). A prisoner must exhaust administrative remedies as to any

claim that arises in the prison setting, regardless of any limitations on the kind of relief

that may be gained through the grievance process. *See Porter v. Nussle*, 534 U.S. 516,

532 (2002); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[I]t is beyond the

power . . . of any . . . [court] to excuse compliance with the exhaustion requirement,

whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204

F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp. 2d

884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)).

The PLRA "completely precludes a futility exception to its mandatory exhaustion

requirement." *Nyhuis*, 204 F.3d at 71.  The PLRA also mandates that an inmate

"properly" exhaust administrative remedies before filing suit in federal court.

*Woodford v. Ngo*, 548 U.S. 81, 92 (2006).  "Proper exhaustion demands compliance

with an agency's deadlines and other critical procedural rules because no adjudicative

system can function effectively without imposing some orderly structure on the course

of its proceedings." *Id*. at 90-91.  Such requirements "eliminate unwarranted federal-

court interference with the administration of prisons, and thus seeks to 'affor[d]

corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case.'" *Id*. at 93 (quoting *Nussle*, 534 U.S. at 525).

Failure to substantially comply with procedural requirements of the applicable

prison's grievance system will result in a procedural default of the claim.  *Spruill v.

Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).

   A prisoner does not have to allege in his complaint that he has exhausted

administrative remedies.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Failure to

exhaust available administrative remedies is an affirmative defense.  *Id*.  Therefore, it

must be pleaded and proven by the defendants.  *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania DOC has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 PA. CODE § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System.  After an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review.  An inmate may then appeal an adverse decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and Appeals.  *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

In the instant case, Medical Defendants argue that Beckett has failed to exhaust his administrative remedies with respect to them because he did not name them specifically in his grievances.  In *Spruill*, 372 F.3d at 234, the Third Circuit recognized that under the DOC's administrative review system, a prisoner's grievance should identify specific persons, if practicable.  It held that an unexplained failure to identify a responsible prison official in a grievance constitutes a procedural default of

the claim.  *Id*.  The Court of Appeals added that the prison's grievance process could

excuse such a procedural default by identifying the unidentified person and

acknowledging that they were fairly within the compass of the prisoner's grievance.

*Id*.  In his brief in opposition to the motion to dismiss, Beckett argues that all

Defendants were either the main actors or accessories in the continuing violations

against him.  Reviewing the grievances Beckett attaches to his amended complaint,

and viewing the facts in a light most favorable to Beckett, the court notes that

Beckett's grievances and suit are not about only specific instances of the denial of

medical treatment.  Rather, the grievances and suit are about a larger-scale denial of

medical treatment in which the Medical Defendants knew they were alleged to be

implicated.  *See Spruill*, 372 F.3d at 234.  As a result, the court will deny the motion

to dismiss as to this claim.

### 4.  <u>Deliberate Indifference to Beckett's Medical Needs</u>

Medical Defendants argue that Beckett has failed to state a claim of deliberate

indifference to his medical needs in violation of the Eighth Amendment.  The court

does not agree.

To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual

punishment based on the denial of medical care, a plaintiff must establish that the

defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993).  There are two components to this standard: initially, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious.  Additionally, the plaintiff must make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).  Deliberate indifference may be manifested by an intentional refusal to provide medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer*, 991 F.2d at 68; *see also Spruill*, 372 F.3d at 235 (quoting *White v. Napolean*, 897 F.2d 103, 109 (3d Cir. 1990) (finding "deliberate indifference to serious medical needs" standard is met when pain is intentionally inflicted on a prisoner, where the denial of reasonable requests for medical treatment exposes the inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care)); *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

27

Further, this test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients.  Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'"  *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979), quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist.  *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988).  Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim.  *Lanzaro*, 834 F.2d at 346.  Only flagrantly egregious acts or omissions can violate the standard.  Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider.  *White*, 897 F.2d at 108-10; *see also Estelle*, 429 U.S. at 105-06 (medical malpractice is an insufficient basis upon which to establish an Eighth Amendment violation); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("It is well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not

28

constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (mere allegations of malpractice do not raise issues of constitutional import).

In the instant case, Medical Defendants argue that a liberal reading of Beckett's amended complaint does not establish deliberate indifference to his medical needs. The court disagrees. Viewing the facts in a light most favorable to Beckett, the court finds that he has asserted a claim of deliberate indifference to his medical needs based on his assertion that he was prescribed with the medical treatment of hot showers by Dr. Mangino and subsequently Medical Defendants either intentionally refused to provide him with that treatment or denied him the treatment for non-medical reasons. *See Durmer*, 991 F.2d at 68; *Spruill*, 372 F.3d at 235. The ultimate success or failure of this claim is not before the court on a 12(b)(6) motion, only whether Beckett has properly alleged a cause of action, which he has. Therefore, Medical Defendants motion to dismiss as to this claim will be denied.

### 5.   ADA Claim

Medical Defendants argue that Beckett has failed to state a claim under the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12131, *et seq*. The court agrees.

The ADA prohibits the exclusion of otherwise qualified participants from any program or benefits on account of their disability. 42 U.S.C. § 12132. Title II of the ADA states, "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, a claim under the ADA requires that: (1) the plaintiff has a disability; (2) the plaintiff is otherwise qualified for the program sought or would be qualified if the defendant made reasonable modifications to the program; and (3) the plaintiff was excluded from the program solely by reason of his or her disability. *See Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1009 (3d Cir. 1995). Title II of the ADA applies to state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *Brown v. Pennsylvania Dep't of Corr.*, 290 F. App'x 463, 467 (3d Cir. 2008).

Beckett's claims that the denial of treatment for his RSD/CRPS violated the ADA fails. Even assuming that Beckett is disabled within the meaning of the ADA, there is no evidence that he was excluded from any program on the basis of his disabilities. Rather, he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions. *See Iseley v.*

30

*Beard*, 200 F. App'x 137, 142 (3d Cir. 2006); *Bryant v. Madigan*, 84 F.3d 246, 249

(7th Cir. 1996) (holding that "the [ADA] would not be violated by a prison's simply

failing to attend to the medical needs of its disabled prisoners . . . the [ADA] does not

create a remedy for medical malpractice."); *Iseley v. Beard*, Civ. No. 1:CV-02-2006,

2009 WL 1675731, at *11-12 (M.D. Pa. June 15, 2009).  Accordingly, the motion to

dismiss will be granted as to Beckett's ADA claims.

### 6.    **Fourteenth Amendment Claim**

Medical Defendants argue that Beckett has failed to state a procedural due

process claim under the Fourteenth Amendment.  While the argument in support is

cursory, at best, the court notes that any procedural due process claim set forth by

Beckett in his amended complaint has been alleged against Defendants Albright and

Randolph, neither of whom is a Medical Defendant.  (*See* Doc. 70 ¶ 27.)  As such,

Medical Defendants' motion to dismiss as to this claim will be denied.

### 7.    **Punitive Damages**

Medical Defendants argue that Beckett's request for punitive damages should

be dismissed.  Based on the court's disposition of Beckett's claims based on all

Defendants' motions to dismiss, the court will defer ruling upon punitive damages at

this time.

31

## IV.    <u>Conclusion</u>

For the reasons set forth herein, the court will dismiss as parties in this action "John/Jane Doe, Unknown Employees of Pennsylvania Department of Corrections," the DOC, and PHS.  Further, the claims for money damages against DOC Defendants in their official capacities will be dismissed.  Finally, the claims under the ADA will be dismissed.

An appropriate order will issue.

    s/Sylvia H. Rambo
United States District Judge

Dated:  October 12, 2011.

32

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HARRY L. BECKETT,** | : | **CIVIL NO. 1:CV-10-00050** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEPARTMENT OF CORRECTIONS,** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) "John/Jane Doe, Unknown Employees of Pennsylvania Department of

Corrections" are **DISMISSED** as parties in this action.

2) The claims against the Department of Corrections are **DISMISSED** and the

DOC is **DISMISSED** as a party in this action.

3) The claims against Prison Health Services are **DISMISSED**, and PHS is

**DISMISSED** as a party in this action.

4) The claims under the ADA are **DISMISSED**.

5) The remaining DOC Defendants and Medical Defendants are directed to file an answer to the amended complaint within thirty (30) days of the date of this order.

s/Sylvia H. Rambo
United States District Judge

Dated:  October 12, 2011.